**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT W. KOCH, | : | CASE NO. 3:12-cv-01906-GBC |
| | : | |
| Plaintiff, | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| v. | : | MEMORANDUM TO DENY PLAINTIFF'S |
| | : | APPEAL |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | Docs. 8,9,10,11 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM TO DENY PLAINTIFF'S APPEAL**

**I. Procedural History**

On June 6, 2008, Robert W. Koch ("Plaintiff") protectively filed an application for Title II

Social Security Disability benefits ("DIB"), with an onset date of May 13, 2008, and a date last

insured of September 30, 2008, (collectively, the "relevant period") (Tr. 138-47).

This application was denied, and on June 16, 2010 (Tr. 87-96) and January 14, 2011 (Tr.

62-86), a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff testified

and was represented by counsel. On March 15, 2011, the ALJ issued a decision finding that Plaintiff

was not entitled to DIB because Plaintiff could perform reduced range of sedentary work (Tr. 16, Finding No. 5). On August 1, 2012, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On September 24, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g), to appeal the decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1.

On November 26, 2012, Commissioner filed an answer and administrative transcript of proceedings. Docs. 7,8. In January and February 2013, the parties filed briefs in support. Docs. 9,10,11. On April 29, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 16, 2014, the parties consented to Magistrate Judge jurisdiction. Doc. 13.

## II.      Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be less than a preponderance. Jones, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then

the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background

Plaintiff was born on September 23, 1965. On his alleged onset date of May 13, 2008, he was 43 years old. (Tr. 161). He has a high school diploma. (Tr. 171). At the time of his alleged onset he was working as a drywall hanger and finisher, a heavy-duty, skilled position. (Tr. 84, 166).

As for daily activities, Plaintiff testified he does laundry, cooking, feeds the dog, mows the lawn with a riding lawnmower, and drives. (Tr. 75-76). Plaintiff states he gets something out for supper because his wife works. (Tr. 78). He testified that during the day he feeds the chickens,

watches TV, and goes over to visit his parents. (Tr. 79). When the ALJ questioned whether Plaintiff could still lift and carry things, Plaintiff testified he is no longer able to split firewood. (Tr. 76).

The ALJ questioned whether Plaintiff could have a job where he sat all day long. (Tr. 81). Plaintiff stated he laid around all day because he didn't have a choice in bed, but that he never sat all day and he's "not a sitter." (Tr. 81). The ALJ asked whether Plaintiff could work five days a week if he could sit or stand as needed. (Tr. 81). Plaintiff stated he supposed he could do that. (Tr. 81). The ALJ asked if he could do it on a consistent basis, and Plaintiff stated the bleeding problems would interfere. (Tr. 81-82).

### B. Relevant Medical Evidence

### 1. Angiokeratoma

Eight years prior to the relevant period, on December 16, 1999, Plaintiff presented to Christen Mowad, M.D., with scrotal lesions (Tr. 821). He had them for over 15 years and only used over-the-counter medication to treat them (Tr. 821). He noted that they occasionally itched, ached, bled, and scabbed over (Tr. 821). Dr. Mowad assessed the lesions as angiokeratomas and "reassured [Plaintiff] of the[ir] benign nature" (Tr. 821). Plaintiff "was relieved to know they were not worrisome lesions and prefer[red] to just follow them" (Tr. 821).

Several weeks later, on January 8, 2000, Plaintiff similarly described the lesions to Michael J. Piccuta, M.D. (Tr. 464). He also expressed his belief that new lesions continued to develop (Tr. 464). Akin to Dr. Mowad, Dr. Piccuta also diagnosed Plaintiff with angiokeratoma (Tr. 464). He recommended that Plaintiff apply cream as needed and discharged Plaintiff from his care (Tr. 464). Later, during the relevant period, doctors wrote on July 2, 2008, that Plaintiff had a mass, swelling, and herpes-like lesions on his scrotum (Tr. 397). Several days later, on July 6, 2008, doctors noted

the existence of mollusca on Plaintiff's scrotum (Tr. 297). Plaintiff also complained of genitourinary pain, bleeding, and other symptoms during the relevant period, but these related to the temporary implantation of a catheter (Tr. 259-62, 296-302, 348, 367, 369, 371, 373, 396-98, 558, 839).

Two months after the conclusion of the relevant period, on December 10, 2008, Plaintiff presented to Stephanie Y. Daniel, M.D., for evaluation of his scrotal lesions (Tr. 545). He noted that they had persisted since childhood and multiplied as he aged (Tr. 545). He described them as pruritic, painful, and prone to spontaneous bleeding (especially since he began blood-thinning medication) (Tr. 545). They did not weep fluid, however (Tr. 545). On examination, Plaintiff appeared to be healthy, pleasant, and in no distress (Tr. 546).

Finally, on December 6, 2010, Plaintiff visited Sabrina K. Dowd, M.D., for a second evaluation of his scrotal lesions (Tr. 931). He offered similar complaints (Tr. 931). Dr. Dowd "reviewed in detail with [Plaintiff] laser treatment for this" (Tr. 931). Plaintiff, however, "just wanted to know what this was and d[id] not desire any treatment" (Tr. 931). Dr. Dowd informed "him that this is a benign condition" (Tr. 931).

### 2. COPD

On April 14, 2009, more than six months after the end of the relevant period, James P. Herberg, M.D., of Clinton Medical Associates, overtly noted Plaintiff's COPD for the first time (Tr. 669). Prior to that, doctors collectively found during the relevant period that Plaintiff had clear lungs, no respiratory difficulty, and / or appropriate / non-labored breath sounds (Tr. 277, 282, 285, 293, 297, 301, 349, 398). Plaintiff also routinely exhibited no crackles, rales, wheezing, or rhonchi in his lungs (Tr. 220, 252, 277, 282, 285, 341, 558).

Plaintiff noted that in May 2008, he experienced shortness of breath (among other things)

with physical activity (Tr. 252). But for the remainder of the relevant period he denied experiencing this symptom (Tr. 219, 276, 285, 296). Moreover, a May 2008 chest x-ray showed no active pulmonary disease (Tr. 283, 285, 643). A June 5, 2008 chest x-ray revealed a somewhat limited inspiratory effort, but no suggestion of active pleural or parenchymal process (Tr. 225). On July 15, 2008, doctors noted that Plaintiff's pulmonary system was stable (Tr. 301). An August 19, 2008 CT scan of Plaintiff's abdomen and pelvis showed no focal lesions, no infiltrates, and no pleural effusions in his lung bases (Tr. 379).

### 3. Medical Source Opinions

In June 2008, Plaintiff's doctor opined to the Pennsylvania Department of Public Welfare that Plaintiff's impairments temporarily incapacitated him (Tr. 214). Later, on March 6, 2009, Mark Bohn, M.D., a state agency physician, determined that at Plaintiff's date last insured, he retained the residual functional capacity to perform a modified range of light work (Tr. 456-62).

One year later, on March 11, 2010, Dr. Herberg opined that Plaintiff could not work because of, among other things, his COPD (Tr. 915). Nonetheless, Dr. Herberg did not mention Plaintiff's angiokeratoma (Tr. 915). Dr. Herberg repeated his opinion on October 21, 2010 (Tr. 929-30). Once again, he did not mention Plaintiff's angiokeratoma (Tr. 930).

On July 23, 2010, Richard H. Blum, M.D., an independent medical expert, reviewed the record and determined that Plaintiff retained the residual functional capacity to perform sedentary and some light work (Tr. 919-24, 926-27).

### C. Plaintiff Hearing Testimony

Plaintiff testified that the angiokeratoma lesions his scrotum will bleed "good" at least once a month, which means that they will bleed for about 18 hours. (Tr. 69-70). He has tried various

methods to control the bleeding but without success. (Tr. 69-70). Like the angiokeratoma, Plaintiff's hemorrhoids cause him to bleed excessively. After going to the bathroom, he will have to lie on his stomach for at least one-half hour to allow the bleeding to stop and the swelling to go down. (Tr. 71-72). He has undergone one banding procedure to remove hemorrhoids, with some relief of his symptoms. He is expected to have to undergo at least one additional banding procedure. (Tr. 940). According to Plaintiff, this uncontrolled bleeding is the primary reason why he cannot work; he doubts that he can get up and go and be on time at a certain time each day. (Tr. 82). In other words, he may be able to perform all the duties of a particular position but he cannot do them on a consistent, reliable basis.

At the June 16, 2010 hearing, the following testimony transpired:

"ALJ:     He was diagnosed with COPD but I don't see any pulmonary function studies in here.

ATTY:     No, I think there was one but it was indeterminable so --

ALJ:     Okay. Because to establish that, that's what I need. Because I don't have any lump findings either.

ATTY:     Well I think his more severe disability [INAUDIBLE] --

ALJ:     Is the cardiac, but the --

ATTY:     Yeah, the cardiac.

ALJ:     This -- this and the OBC plays into it so that's what I wanted to see if we had something additional to go with that. You're not currently seeing a pulmonologist at all are you? No lung doctor?

CLMT:     No.

ALJ:     No, okay.

CLMT:        I don't know what that is.

ALJ:         Do you have to use an inhaler?

CLMT:        I have one, yes.

ALJ:         Do you take something every day for your breathing?

CLMT:        No.

ALJ:         No, you just use the inhaler when you have a problem?

CLMT:        Yeah."

(Tr. 91-92).

## IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant

satisfies this burden, then the Commissioner must show that jobs exist in the national economy that

a person with the claimant's abilities, age, education, and work experience can perform. Mason v.

Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the

meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.      Plaintiff Allegations of Error

### 1.      ALJ Residual Functional Capacity Finding

Plaintiff contends the ALJ erred in failing to consider Plaintiff's impairments of

angiokeratoma of the scrotum and chronic obstructive pulmonary disorder in determining Plaintiff's

residual functional capacity. Pl. Br. at 4, Doc. 9.

The ALJ evaluated the record before determining Plaintiff's residual functional capacity.

### a. ALJ Review and Findings

"Through the date last insured, the claimant has the following severe impairments: coronary

artery disease, hypertension, hemorrhoids, and status post rotator cuff repair. 20 C.F.R. §

404.1520(c)." (Tr. 15).

"After careful consideration of the entire record, the [ALJ] find[s] that, through the date last

insured,  the claimant had the residual functional capacity to perform sedentary work as defined in

20 C.F.R. § 404.1567(a) except the claimant must be allowed the opportunity to alternate between

sitting and standing at least every 15 minutes. He is limited to occasional bending, balancing,

stooping, kneeling, crouching, crawling, or climbing of stairs. He must avoid ladders, ropes, and

scaffolds. He must avoid working at unprotected heights and around dangerous machinery." (Tr. 16)

(emphasis added).

"The claimant has a number of medical problems, including coronary artery disease,

hypertension, hemorrhoids, and status post rotator cuff repair. These impairments are severe insofar as they limit the claimant to a range of sedentary work as set forth above. However, they are not so severe as to be completely disabling. The claimant is capable of doing a range of sedentary work on a sustained and consistent basis despite the limitations arising as a result of his impairments." (Tr. 16) (emphasis added).

"The claimant alleges disability due to heart disease. He alleges that he has constant pain and fatigue. He alleges that his chest pain is exacerbated with exertion. He alleges that he gets dizzy when he exerts himself. He alleges difficulties lifting, squatting, bending, standing, walking and kneeling. He alleges that he has difficulties concentrating and completing tasks due to fatigue." (Tr. 17).

"At the hearing, the claimant testified that he suffers from hemorrhoids that cause him severe pain. He testified that he experiences significant bleeding with every bowel movement. He testified that he often has difficulties sitting and sometimes needs to lie on his stomach until his swelling goes down (Hearing Testimony). The claimant testified that he also experiences left arm pain as a result of his previous work as a drywall finisher." (Tr. 17) (emphasis added).

"The treatment notes of the claimant's family physician, James B. Herberg, M.D. show normal examinations with no significant complaints other than some edema of the right lower extremity and some weight gain due to the claimant's quitting smoking. Dr. Herberg continues to prescribe medication to control the claimant's hypertension." (Tr. 17-18) (emphasis added).

"In terms of the claimant's hemorrhoids, the treatment records confirm that, in December of 2010, the claimant had been diagnosed with a prolapsing hemorrhoid for which his treating doctors recommended rubber banding surgery. The claimant testified that he underwent this procedure but

that <u>he continues to bleed with bowel movements and continues to experience significant pain and</u> <u>discomfort. However, the medical evidence of record simply does not document the chronic, severe</u> <u>pain and limitations that the claimant described at the hearing. In fact, the records of the claimant's</u> <u>family physician do not mention any continuing hemorrhoid related difficulties. Nevertheless, in</u> <u>including a sit / stand option in the above residual functional capacity, the [ALJ] has accommodated</u> <u>the claimant's subjective complaints with regard to this impairment</u>." (Tr. 18) (emphasis added).

"<u>Just as the above treatment records do not support a finding of disability, the claimant's</u> <u>activities of daily living indicate that the claimant is capable of performing a range of sedentary</u> <u>work. The claimant is able to attend to his own personal needs, shop for food, and pay bills. While</u> <u>the claimant testified that he couldn't work in a seated job because he is not a 'sitter,' he supposed</u> <u>that he would be able to maintain some form of employment if he were given a sit / stand option</u> <u>(Hearing Testimony)</u>." (Tr. 18) (emphasis added).

"As for the opinion evidence, the [ALJ] submitted the entire record to Dr. Blum, an impartial medical expert, in order to obtain his professional opinion with regard to this claim. Based upon his review of the entire record, Dr. Blum concluded that, based upon the claimant's coronary artery disease with angina pectoris on heavy lifting, the claimant is capable of lifting up to 20 pounds on an occasional basis but carrying only ten pounds occasionally. <u>Dr. Blum also placed limitations on</u> <u>the claimant's ability to sit / stand at one time without interruption</u>. As Dr. Blum is a highly qualified physician who is also an expert in Social Security disability evaluation, the [ALJ] gives significant weight to his opinions." (Tr. 18) (emphasis added).

"The [ALJ] has considered the opinions offered by claimant's family physician, Dr. Herberg, who indicates that the claimant is totally disabled due to coronary artery disease, hypertension, and

mild obesity. The [ALJ] gives little weight to this opinion as it is conclusory in nature and unsupported by the medical evidence of record, including his own treatment records." (Tr. 18).

"The [ALJ] has also considered and rejected the opinions offered by claimant's treating physician in a form submitted to the Department of Public Welfare, wherein claimant's physician indicated that the claimant was temporarily disabled from June 19, 2008 to June 19, 2009. This was a form submitted to the Department of Public Welfare and does not contain any medical support for this opinion. Furthermore, the issue of disability is an issue reserved to the Commissioner. Lastly, and as indicated above, the claimant's physical examinations would not support a finding of total disability." (Tr. 18-19).

"In sum, the above residual functional capacity assessment is supported by the medical evidence of record, including the treatment records and the opinion of Dr. Blum. In deference to the claimant's allegations regarding the severe impairments, the [ALJ] placed even greater limitations than those imposed by Dr. Blum." (Tr. 19).

### b. Case Law and Analysis

Plaintiff contends the ALJ erred in failing to properly consider Plaintiff's angiokeratoma of the scrotum and chronic obstructive pulmonary disorder in determining Plaintiff's residual functional capacity. Pl. Br. at 4, Doc. 9. From the review of the record, the ALJ throughly evaluated Plaintiff's impairments; medical history; hearing testimony; objective medical evidence that does not document the chronic, severe pain and limitations Plaintiff described at the hearing; ability to perform daily activities; the evidence that none of the treating sources indicated Plaintiff could not work due to angiokeratoma of the scrotum or COPD; opinion evidence; credibility; and ability to perform sedentary work with a sit / stand option.

Plaintiff states the ALJ did not consider the angiokeratoma of the scrotum or COPD in the

decision. Pl. Reply at 1, Doc. 11. However, the ALJ clearly took testimony on both impairments. Plaintiff testified he bleeds once a month for eighteen hours, and the ALJ noted Plaintiff was diagnosed with COPD but did not have any pulmonary function studies or a pulmonologist / lung doctor. (See Tr. 80, 91). In addition, there was no medical evidence to support disability during the relevant period based on angiokeratoma of the scrotum or COPD. Finally, the ALJ made allowances for Plaintiff's cardiac condition and testimony as to bleeding by limiting him to sedentary work with a sit / stand option (Tr. 81).

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec.,

667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). Mistick v. Colvin, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

In Chandler v. Comm'r of Soc. Sec., 667 F.3d at 362, the Third Circuit held that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

The record evidence reveals that during the four-and-a-half month relevant period from the onset date of May 13, 2008, to the date last insured of September 30, 2008, neither Plaintiff's angiokeratoma nor his COPD more than minimally affected his ability to perform basic work activities.

Plaintiff contends his primary care physician consistently diagnoses him with chronic obstructive pulmonary disorder, secondary to smoking, and he uses an inhaler four times per day. (Tr. 355, 915, 929-30) (Pl. Br. at 7, Doc. 9). However, Plaintiff points to records from February 7,

2009 (inhaler usage) and March 11, 2010 and October 21, 2010 (COPD diagnosis from smoking) (Tr. 915, 929-30), which were after the relevant period.

As for the angiokeratoma, Plaintiff admits he was reassured the condition was benign and was told there were not many treatment options (Tr. 361, 415-17, 464, 821, 931) (Pl. Br. at 6, Doc. 9). One doctor recommended an over-the-counter ointment to control itching and another said surgery could be used to remove the largest of the lesions. (Tr. 415-17, 464) (Pl. Br. at 6, Doc. 9).

In addition, no doctor opined that Plaintiff's angiokeratoma barred him from working during the relevant disability period (Tr. 214-15, 456-62, 915, 919-24, 926-27, 929-30), and no doctor reported Plaintiff's COPD until April 14, 2009 (Tr. 669), more than six months after the end of the relevant period.

Plaintiff contends the ALJ's failure to identify the angiokeratoma of the scrotum or COPD as a "severe" impairment affects the remaining analysis. Pl. Br. at 7, Doc. 9. However, even though the ALJ did not classify the impairments as "severe," he accounted the credibly established limitations in the residual functional capacity.

"[Plaintiff] contends that the ALJ erred in failing to determine whether his obesity was a "severe" impairment, and in failing to consider that impairment in assessing his residual functional capacity. As an initial matter, [Plaintiff] was not denied benefits at the second step of the sequential evaluation process. McCrea v. Commissioner of Social Security, 370 F.3d 357, 361 (3d Cir. 2004) (remarking that "step two is to be rarely utilized as [a] basis for the denial of benefits"). Since the ALJ determined that [Plaintiff] had "severe" impairments, this case proceeded through the remaining steps of the process. The assessment of a claimant's residual functional capacity must account for both "severe" and "nonsevere" impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Where at least one impairment is found to be "severe" and the limitations resulting from the claimant's

remaining impairments are properly considered, an error committed at the second step of the process with respect to one of those other impairments is inconsequential. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)." See McCleary v. Astrue, No. 10–1116, 2011 WL 4345892, at *9 (W.D. Pa. Sept. 15, 2011).

Similarly in this case, the ALJ found Plaintiff had other severe impairments, namely bleeding from hemorrhoids, hypertension, and coronary artery disease, and the decision proceeded through the remaining steps in the disability process. (Tr. 15, 17).

Even if the ALJ should have considered the angiokeratoma of the scrotum or COPD as a severe impairment, the error was harmless and would not have altered the result. The ALJ allocated for a sit / stand option to accommodate Plaintiff's allegations of bleeding and sedentary work for the history of cardiac problems.

The burden lies with Plaintiff to demonstrate harm from such error that would have changed the ALJ's decision, but he has not done so here. Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009); see also Molina v. Astrue, 674 F.3d 1104, 1111, 1115-22 (9th Cir. 2012). "No principle of administrative law 'requires that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision." Coy v. Astrue, No. 08-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following

factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa. Mar. 14, 2014). When the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

"[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome, and the ALJ limited the amount of weight Plaintiff could lift with her arms in his RFC and hypothetical. The Court finds that the ALJ's finding was supported by substantial evidence and will not remand for further consideration of Plaintiff's . . . carpal tunnel syndrome." Rybarik v. Astrue, No. 12–515, 2012 WL 5906162, at *6 (W.D. Pa. Nov. 26, 2012).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional,

but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . .

Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

## V.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a

reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the

Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will

follow.


Dated: August 29, 2014                                              s/Gerald B. Cohn
                                                      GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE